IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| YASHIKA L. MABRY, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-13-02059 |
| CAPITAL ONE, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This is a race discrimination case brought by Yashika L. Mabry ("Mabry"), an African-American, against her former employer, Capital One, N.A. ("Capital One"), for purported violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*, and § 2-222 of the Prince George's County Code. This Memorandum Opinion and accompanying Order address Capital One's Motion for Summary Judgment, ECF No. 33. A hearing is not necessary. *See* Loc. R. 105.6 (Md.). For the reasons stated below, Capital One's Motion for Summary Judgment is GRANTED. Mabry's complaint is therefore dismissed with prejudice.

**I.     BACKGROUND**

In October 2011, Mabry was hired by Capital One as a district manager. *See* Plaintiff's Response to Defendant's "Statement of Undisputed Facts," ECF No. 39 at ¶ 1. As a district manager, Mabry's role was to develop and implement retail banking strategies within the Mid-Atlantic region. *See id.* at ¶ 2. Specifically, Mabry was expected to oversee and lead her district, with a focus on sales and service, by coaching Branch Managers and Relationship Bankers, delivering on sales volumes and revenue targets, and executing bank initiatives. *See id.* She was

1

also responsible for managing expenses, operations, credit controls, human resources, and meeting financial and compliance standards. *See id.* When Mabry was hired, she was supervised by Michael Pugh, who supervised her until March 1, 2012 when George Swygert ("Swygert") was hired by Capital One as a regional executive of the Mid-Atlantic region. *See id.* at ¶ 4.

To measure a district manager's success, Capital One uses, among other factors, a system of key performance indicators ("KPIs"). *See id.* at ¶ 9. The KPIs are performance goals collaboratively set by Capital One's marketing and analytics teams, as well as by individual employees and their managers. *See id.* The use of KPIs allows Capital One to objectively evaluate and compare districts. *See id.* Capital One considers its district managers to be successful when they meet at least seven of the nine established KPIs. From May 2012 through August 2012, it is undisputed that Mabry was not meeting this goal. *See id.* at ¶ 21. Specifically, in May 2012, Mabry only met three out of nine KPIs; in June 2012, she met four out of nine; in July 2012, she met three out of nine; and in August 2012, she met four out of nine. *See id.* From February 2012 through September 2012, Swygert conducted regular coaching sessions with Mabry during which he addressed many of his performance-related concerns and offered her suggestions for improvement. *See id.* at ¶¶ 12-18; *see also* ECF No. 39-7. By September 2012, however, Mabry's district had one of the lowest year-to-date corporate rankings in the Mid-Atlantic region, ranking 55th out of 67 districts company-wide. *See* ECF No. 39 at ¶¶ 20-22.

In addition to Mabry's failure to meet the required number of KPIs and the poor performance of her district, she was also the subject of multiple complaints filed with Capital One's Associate Relations Division – the division of Capital One responsible for handling human resources-related complaints from staff. *See id.* at ¶ 24; *see also id.* at ¶ 5. For example, on January 24, 2012, the Associate Relations Division received a complaint from an associate

who had recently returned to work from leave under the Family and Medical Leave Act and was complaining that Mabry would not allow her to take a flex day. *See id.* at ¶ 25. Then, on February 13, 2012, the Associate Relations Division received a complaint from an Assistant Branch Manager about Mabry's mishandling of her religious accommodation request. *See id.* at ¶ 26. On March 27, 2012, the Associate Relations Division received yet another complaint about Mabry – this time from a Branch Manager who claimed that Mabry made inappropriate comments to her, such as: "I was just trying to be nice to you, I am not going to be nice anymore" and "[m]aybe if you leave the company, you will have twins." *See id.* at ¶ 27. Allegedly, the latter comment was made in reference to personal information Mabry knew about the Branch Manager's efforts to have children. *See id.* Then again, on July 5, 2012, the Associate Relations Division received another complaint from a Branch Manager, LaToya Williams, who claimed that Mabry told her that "she needs to be at work every day, no vacation, and no [Branch Manager] . . . salary increase." *See id.* at ¶ 28. Although Mabry disputes the relevance and merits of these complaints, she does not dispute that she was, in fact, the subject of these multiple complaints. *See id.* at ¶¶ 24-32. Ultimately, Swygert terminated Mabry from her position as District Manager on September 27, 2012. *See id.* at ¶ 39. A few months later, Swygert hired Mabry's replacement who, like Mabry, was an African-American. *See id.* at ¶ 48. As of May 2014, under the leadership of Mabry's replacement, the district Mabry formerly led was ranked 20th out of 62 districts company-wide in overall performance. *See id.*; *see also id.* at ¶ 12.

Shortly after Mabry's termination, on December 30, 2012, Swygert terminated another low-performing Capital One District Manager, Conchita Lumpkins ("Lumpkins"), an Hispanic. *See id.* at ¶ 42. Lumpkins, like Mabry, was also not meeting her KPIs from May 2012 through

3

August 2012. *See id.* at ¶ 42. Additionally, Lumpkins' district, like Mabry's, was ranked poorly (48th out of 67). *See id.* at ¶ 22.

On June 10, 2013, Mabry filed this action in the Circuit Court for Prince George's County, Maryland claiming that Capital One's decision to terminate her was the result of racial discrimination. *See* ECF No. 1. On July 17, 2013, Capital One removed that case to this Court. *See id.* Discovery is now complete and Capital One has filed a motion for summary judgment. *See* ECF No. 33. For the reasons discussed more fully below, Capital One's motion for summary judgment is granted.[1]

## II. STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to

---

[1] Capital One has also filed a motion to strike Mabry's opposition for exceeding the page limits set forth in Local Rule 105.3. *See* ECF No. 41 at 1. Although the Court typically requires strict adherence to page limits, the Court has, in this instance, considered Mabry's full brief, ECF Nos. 39 and 39-19, and will therefore deny Capital One's motion to strike.

trial." *Felty v. Grave–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III.    DISCUSSION

Title VII makes it illegal for an employer "to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff generally may defeat summary judgment and establish a claim for race discrimination [under Title VII] through two avenues of proof." *Holland v. Washington Homes, Inc.*, 487 F. 3d 208, 213 (2007). One avenue is for the plaintiff to demonstrate "through direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action." *Id*. (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F. 3d 277, 284 (4th Cir. 2004) (*en banc*)). Alternatively, the plaintiff may proceed under the familiar burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, the plaintiff has the initial burden of establishing a prima facie discrimination case by a preponderance of the evidence. *See McDonnell Douglas*, 411 U.S. at 802; *see also Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are but a pretext for discrimination, thus creating an inference that the defendant acted with discriminatory intent. *See id*. at 143. If the plaintiff cannot produce evidence demonstrating the falsity of the defendant's proffered reasons,

the defendant is entitled to summary judgment as a matter of law. *See id*. at 148. Here, Mabry has chosen to prove her case through the *McDonnell Douglas* burden-shifting framework. The Court will therefore proceed under that rubric.[2]

### A. Prima Facie Case

Mabry must demonstrate a prima facie case of race discrimination by showing that "(1) [s]he is a member of a protected class; (2) [s]he suffered [an] adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland*, 487 F.3d at 214 (citing *McDonnell Douglas Corp.,* 411 U.S. at 802). For the reasons discussed below, Mabry has failed to establish her prima facie case because she cannot show that she was meeting Capital One's legitimate expectations at the time of her termination and because she was not replaced by someone outside her protected class.

It is undisputed that Mabry, an African–American, is a member of a protected class who suffered an adverse action when she was terminated by Capital One on September 27, 2012. *See* ECF No. 39 at ¶ 39. Mabry has therefore satisfied the first two elements of her prima facie case. As to the third element, however, Mabry has failed to establish that she was meeting Capital One's legitimate job expectations as the District Manager of the Mid-Atlantic region at the time of her termination. *See* ECF No. 33-1 at 15-18. Mabry contends, as an initial matter, that it is not her burden to produce evidence sufficient to show her satisfactory job performance; instead, she

---

[2] Mabry appears to suggest that this Court adopt the approach taken by the United States Court of Appeal for the District of Columbia Circuit in *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-95 (D.C. Cir. 2007) and not analyze whether she has made a prima facie case once Capital One asserts a non-discriminatory basis for its employment action. *See* ECF No. 39-19 at 3. The Fourth Circuit has declined to follow that approach. *See Pepper v. Precision Valve Corp.*, 526 F. App'x 335, 336 (4th Cir. 2013).

argues that it is "Defendant's burden to prove she was not meeting Capital One's legitimate expectations." ECF No. 39-19 at 13 n. 3. Mabry is incorrect. At the prima facie stage, it is "the *plaintiff* [who] bears the burden of establishing that he was meeting the company's legitimate expectations at the time of his termination." *Brown v. Siemens Healthcare Diagnostics, Inc.*, No. 11-0769, 2012 WL 3136457, at *7 (D. Md. July 31, 2012) (emphasis added); *see also Harris v. Maryland House of Correction*, 209 F. Supp. 2d 565, 570 (D. Md. 2002) (granting summary judgment in favor of employer-defendant where "plaintiff has not come forward with material evidence indicating that at the time of her discharge she was performing her job at a level which met her employer's legitimate expectations").

To satisfy this burden at the summary judgment stage, it is simply not enough for Mabry to rely on her own self-serving allegations that she was "a competent employee who performed her duties and responsibilities in a satisfactory manner." ECF No. 8 at ¶ 39. To be sure, Mabry's "own perception of her job performance cannot create an issue of fact on this element." *Evans*, 80 F.3d at 960-961; *see Pepper v. Precision Valve Corp.*, 526 F. App'x 335, 337 (4th Cir. 2013) (recognizing that plaintiff's "self-serving statements regarding his job performance are insufficient to show that he met [his employer's] legitimate performance expectations"); *see also Ingram v. Baltimore Gas & Elec. Co.*, No. 02-2869, 2004 WL 350583, at *10 (D. Md. Feb. 25, 2004) (granting summary judgment in favor of defendant-employer where plaintiff "offers only his own self-serving assertions that his performance during this period was satisfactory"). Instead, Mabry must actually "demonstrate that [s]he was generally satisfying [her] employer's relevant, objective performance standards at the time of [her] termination." *Brown*, 2012 WL 3136457, at *7. And while this burden "is not onerous" (*id.*), Mabry has failed to meet it here.

First, it is undisputed that, at the time of Mabry's termination, the district for which she was responsible was one of the worst performing districts in the Mid-Atlantic region. Specifically, as of September 2012, Mabry's district was ranked 55th out of the 67 districts company-wide. *See* ECF No. 39 at ¶ 20. Additionally, Mabry was the subject of multiple complaints while employed as a district manager at Capital One. *See id.* at ¶¶ 24-28. It is also undisputed that Mabry was not satisfactorily meeting her KPIs. *See id.* at ¶¶ 15-16. Capital One considers its district managers to be successful when they meet at least seven of the nine established KPIs. From May 2012 through August 2012, however, Mabry was not meeting this expectation. *See id.* at ¶ 21. Specifically, in May 2012, Mabry met only three out of nine KPIs; in June 2012, she met four; in July 2012, she met three; and in August 2012, she met four. *See id.* Mabry does not dispute these facts. In fact, Mabry concedes that her district's performance while she was District Manager for the Mid-Atlantic region was poor. *See* ECF No. 39-19 at 13-14. She contends, however, that her district's performance should not be attributed to her because the poor results stemmed from "market forces" "beyond [her] control." *Id.*; *see also* ECF No. 39 at ¶ 20 ("Plaintiff does not dispute Defendant's contention that her District 7 was a poor performer but disputes Defendant's suggestion that the poor performance was Plaintiff's fault."). Of course, market forces – as unfair and unpredictable as they can be – cannot shield an at-will employee from termination when an employer, in the exercise of its legitimate business judgment, deems the employee's performance to be unsatisfactory. *See Beall v. Abbott Laboratories*, 130 F.3 d 614, 620 (4th Cir. 2007) ("It is axiomatic that an employer is free to set its own performance standards, provided such standards are not a 'mask' for discrimination.").

Nor can Mabry rely on her former supervisor's (Pugh's) testimony that he thought Mabry was a competent employee to demonstrate her satisfactory performance. *See* ECF No. 39 at ¶ 15.

At the time of Mabry's termination, seven months had passed since Pugh supervised Mabry. Pugh's assessment of Mabry's performance months before she was terminated is therefore irrelevant to her prima facie case. *See Brown*, 2012 WL 3136457, at *7 (assessment of employee's performance must be drawn from the time of the employee's termination). Accordingly, Mabry has failed to carry her burden of establishing that she was meeting Capital One's legitimate expectations at the time of her termination in September 2012.

Additionally, Mabry has failed to satisfy the fourth element of her prima facie case. That is, Mabry has failed to demonstrate that, following her termination, her position as District Manager of the Mid-Atlantic region remained open or was filled by someone outside of her protected class. In the Fourth Circuit, it is "a general rule [that] Title VII plaintiffs must show that they were replaced by someone outside their protected class in order to make out a prima facie case." *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005). Here, Mabry concedes that her replacement was an African-American. *See* ECF No. 39 at 31. For this additional reason then, Mabry has failed to satisfy her prima facie case. *See e.g.*, *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998) (affirming district court's grant of summary judgment as to plaintiff's sex discrimination case where plaintiff, a male, "was replaced by a male"); *Harris v. Home Sales Co.*, No. 09-1109, 2011 WL 826347, at *5 (D. Md. Mar. 7, 2011) (granting summary judgment in favor of employer-defendant where there "is no dispute regarding the fact that, after firing [plaintiff], [defendant] hired Donte Logan, an African–American, to replace him"), *aff'd*, 499 F. App'x 285 (4th Cir. 2012); *Ford v. Berry Plastics Corp.*, No. 12-0977, 2013 WL 5442355, at *8 (D. Md. Sept. 27, 2013) (granting summary judgment in favor of employer-defendant where female, African-American "[p]laintiff has not even alleged, let alone produced evidence, that she was replaced either by a male or by a non-African-American person").

Recognizing that she has failed to satisfy the fourth element of her prima facie case, Mabry argues that her failure should be excused in this instance. In support of this argument, Mabry relies on *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005) for the proposition that "a Title VII plaintiff does not always have to show replacement outside the protected class in order to make out a prima facie case." ECF No. 39-19 at 15 (citing *Miles*, 429 F.3d at 486). While it is true that *Miles* "recognized that 'there may be exceptions to th[e] rule [requiring replacement by someone outside the protected class] in limited situations,'" *Miles*, 429 F.3d at 486 (citing *Brown*, 159 F.3d at 905), this case does not present one of those situations. In *Miles*, the court held that "where the plaintiff can show that the firing and replacement hiring decisions were made by different decision-makers, the plaintiff can make out a prima facie case without showing replacement by someone outside the protected class." *Id.* at 485. Here, it is undisputed that Swygert terminated Mabry on September 27, 2012. *See* ECF No. 39 at ¶¶ 24-28. It is also undisputed that Swygert made the decision to hire Mabry's replacement. *See id.* at ¶ 31. The exception to the fourth element of the prima facie case established in *Miles* is therefore inapplicable to the facts of this case and Mabry's failure to satisfy this element is fatal to her claim. For this additional reason then, Mabry's complaint will be dismissed.[3]

---

[3] *Miles* also discusses other situations where a Title VII plaintiff's failure to show replacement by someone outside the protected class may be excused. One of those situations occurs when the decision to hire another person from within the protected class is done to disguise the act of discrimination. *See Miles*, 429 F.3d at 486 (identifying, as possible exceptions, cases "where (1) an age discrimination plaintiff is replaced by a much younger person within the same class, (2) a significant lapse of time occurs between the adverse employment action and the decision to hire another person, and (3) the employer's hiring of another person within the protected class is calculated to disguise its act of discrimination") (citing *Brown*, 159 F.3d 898). There is simply no evidence that Capital One's decision to hire an African-American replacement was done to disguise discrimination. Although Mabry points to an e-mail among Capital One executives identifying various risks associated with its decision to terminate her (*see* ECF No. 39-18 at 1), nothing in this e-mail evinces any intent on the part of Capital One to disguise a discriminatory animus towards Mabry. Rather, it suggests that Capital One exercised due diligence by

B.     **Legitimate, Non-Discriminatory Reason**

Even assuming that Mabry had established a prima facie case, Capital One has put forth sufficient evidence of a legitimate, non-discriminatory reason for terminating her employment. *See Monroe–Lord v. Hytche*, 668 F.Supp. 979, 999 (D. Md. 1987), *aff'd*, 854 F.2d 1317 (4th Cir. 1988). Specifically, Capital One has provided the Court with sufficient evidence to establish that, at the time of Mabry's termination, she was not meeting Capital One's legitimate performance expectations (discussed *supra* Section III.A). *See e.g.*, *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (affirming district court's finding of defendant-employer's legitimate non-discriminatory reason for terminating plaintiff where plaintiff "was terminated for performance-related reasons"); *Taylor v. Rite Aid Corp.*, 993 F. Supp. 2d 551, 568 (D. Md. 2014) ("defendants have produced evidence of a legitimate, non-discriminatory reason for [plaintiff's] termination – her documented performance problems in the area of associate counseling"); *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 868 (D. Md. 2000) ("plaintiff's poor job performance constitutes a legitimate, nondiscriminatory reason for demoting Plaintiff"). Thus, if Mabry could establish a prima facie case (which she has not), the burden would now shift back to Mabry to show that the reasons proffered by Capital One were merely a pretext for a discriminatory purpose. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993).

C.     **Pretext**

To prove pretext, a plaintiff must either show that the employer's explanation is "'unworthy of credence' "or offer other evidence that is sufficiently probative of intentional

---

contemplating its decision to terminate an employee prior to actually taking that action and discussing the appropriate method to communicate its decision, just as any other sophisticated employer would do in the same or similar situation. Nor is there evidence to suggest that any of the other situations identified in *Miles* are present here.

discrimination." *Moore v. Leavitt*, No. 04-2819, 2007 WL 5123539, at *3 (D. Md. Feb. 9, 2007) (citing *Mereish v. Walker* 359 F.3d 330, 336 (4th Cir.2004)). "The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans*, 80 F.3d at 959 (4th Cir. 1996). Mabry has failed to meet this burden.

Mabry initially argues that Capital One's performance expectations "were not truly legitimate" and that her district's poor performance was the result of factors "beyond [her] control." ECF No. 39-19 at 13-14 (arguing that "demographics," "income levels," and the "economic downturn" caused her district's failure). As such, Mabry contends that she should not "be held responsible" for her district's sub-par performance. *See id.* at 14. Once an employer has provided a legitimate, non-discriminatory reason for termination of an employee, however, "it is not the province of the judiciary 'to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Mandengue v. ADT Sec. Sys., Inc.*, No. 09-3103, 2012 WL 892621, at *24 (D. Md. Mar. 14, 2012) (quoting *Hawkins*, 203 F.3d at 279). Here, Capital One has provided a legitimate, non-discriminatory reason for Mabry's termination – namely, her performance. It would therefore be improper for the Court to second-guess Capital One's business decision, unless, of course, there was evidence to suggest that the decision to terminate Mabry for performance-related reasons was actually a pretext for a discriminatory animus. *See Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment"). Mabry argues that she has such evidence here.

Specifically, Mabry claims that during the course of her employment Swygert made several racially charged comments to her and other African-American co-workers that she

contends are evidence that Swygert "harbored a discriminatory animus" towards her. ECF No. 39-19 at 16-20. For example, Mabry claims that during a conference call, Swygert offered to buy his staff, which included a number of African-Americans, "fried chicken from Bojangles'®" if they met their sales goals. *Id.* at 17. Additionally, Mabry contends that Swygert made several other offensive remarks about her hair, "crazy nails," and "hoochie mamma shoes" (*id.* at 16-17), as well as referring to another African-American employee as a "bitch" on several occasion. *Id.* These alleged comments, however ill-advised and unprofessional they may have been, are ultimately not enough to prove a discriminatory animus. "To prove discriminatory animus, the derogatory remark[s] cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir.1999) (quoting *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir.1991)); *see also Sanders v. Bethlehem Steel Corp.*, No. 93-4113, 1995 WL 418585, at *6-7 (D. Md. July 5, 1995) (recognizing that "stray and isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus"), *aff'd*, 91 F.3d 133 (4th Cir. 1996). Swygert's remarks do meet this standard as they were isolated and entirely unrelated to Capital One's ultimate decision to terminate Mabry.

Additionally, many of the comments that Mabry complains of were vague, race-neutral, and/or not directly targeted at Mabry, further blunting any inference of discriminatory animus towards her. *See Huang v. Gutierrez*, No. 08-2882, 2010 WL 93274, at *11 (D. Md. Jan. 5, 2010) ("the stray derogatory comments about women – because these comments were not directed at [plaintiff] and because the comments were vague, they are insufficient, in the balance, to show discriminatory animus"). Finally, there is compelling evidence to suggest that while

Swygert's comment regarding fried chicken evokes a racial stereotype regarding African-Americans, it also reflected Swygert's own personal preference for Bojangles'® and was therefore not a "veiled racial comment." *See* ECF 33-20 at 2. These comments are therefore insufficient to prove by a preponderance of the evidence that Swygert harbored a discriminatory animus towards Mabry.

Next, Mabry argues that Swygert "ignored [Capital One's] internal policies" by terminating her employment prior to "providing [her] with counseling and a performance improvement plan" ("PIP"). ECF No. 39-19 at 20. Mabry contends that this "[d]eviation from standard policy or practice is evidence of pretext . . . ." *Id.* It is uncontroverted, however, that Mabry was provided with extensive coaching and counseling efforts *prior to her termination*. *See* ECF No. 39 at ¶¶ 12-18. In fact, efforts to coach Mabry started no later than February 25, 2012 and continued through September 3, 2012 – just weeks before her termination. *See* ECF No. 39-7. Nor is it evidence of pretext that Swygert failed to offer Mabry a PIP prior to her termination. Indeed, Capital One's Performance Coaching, Discipline and Enforcement Policy clearly states that a manager *does not* have to place an employee on a PIP before that employee can be terminated for performance-related reasons. *See* ECF No. 39-4. Consistent with that discretion, Swygert chose not to place Mabry on PIP prior to her termination, just as he chose not to place Conchita Lumpkins, another district manager, on a PIP prior to her termination on December 30, 2012. *See* ECF No. 39 at ¶¶ 41-42.

Finally, Mabry contends that she has evidence of pretext from the fact that Capital One "has, during the course of this litigation, presented additional reasons for [her] termination over and beyond those which it represented to the EEOC . . . ." ECF No. 39-19 at 22. Specifically, Mabry argues that by failing to identify the multiple complaints against her in its position paper

to the EEOC (*see* ECF No. 39-11), it suggests that Capital One is now "trying to cover up unlawful discrimination" by creating an alternative post-termination justification. ECF No. 39-19 at 21. This argument, however, is inconsistent with the evidence – namely, an internal e-mail dated September 27, 2012 from a Capital One executive that specifically identified the complaints against Mabry as a basis for her termination. *See* ECF No. 39-18 at 1.

Thus, even if Mabry had established a prima facie case of discrimination (and she has not), her Title VII claim would still fail as she has not demonstrated that the legitimate business reason offered by Capital One for Mabry's termination was a pretext for discrimination.

## IV. CONCLUSION

For the reasons discussed above, the Court grants Capital One's motion for summary judgment. Mabry's complaint is therefore dismissed with prejudice.[4]

Dated: December 3, 2014

/S/
George Jarrod Hazel
United States District Judge

[4] Mabry has also brought a race discrimination claim under § 2-222 of the Prince George's County Code. The language of § 2-222 of the Prince George's County code "largely tracks the language of 42 U.S.C. §2000e-2." *Bryan v. Prince George's Cnty., Md.*, No. 10-2452, 2011 WL 2650759, at *8 (D. Md. July 5, 2011) *aff'd*, 484 F. App'x 775 (4th Cir. 2012); *Compare* § 2-222 of the Prince George's County Code ("No employer in the County shall discharge or refuse to hire any person, or act against any person with respect to compensation or other terms and conditions of employment, or limit, segregate, classify, or assign employees because of discrimination.") *with* 42 U.S.C. § 2000e-2(a)(1) (making it illegal for an employer to "to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."). Because Mabry has not differentiated between her two claims, and because the Court sees no reason to treat her state claim any different from her Title VII claim given the similarity between the two statutes, the Court will also dismiss, with prejudice, Mabry's race discrimination claim brought under § 2-222 of the Prince George's County Code. *See Bryan*, 2011 WL 2650759, at *8.